IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| WILLIAM BURKINS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: LKG-21-629 |
| CORIZON RESIDENT AGENT, et al., | ) Dated:  January 25, 2022 |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Self-represented Plaintiff William Burkins brings this civil rights action against Corizon Health Inc.,[1] Kasahun Temesgen, M.D., and Uzoamaka Nwabuwa, RN.  ECF No. 1.  Burkins claims Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment due to delays in testing and treating Burkins for the COVID-19 virus.  On June 28, 2021, Defendants moved to dismiss the Complaint or, alternatively, for summary judgment to be granted in their favor.  ECF No. 18.  Burkins filed a response and Defendants replied.  ECF No. 27.[2]  For the reasons discussed below, Defendants' Motion is granted.

---

[1] The Clerk will be directed to amend the docket to correct Defendant Corizon Resident Agent's name to "Corizon Health Inc."

[2] Burkins filed a response to Defendant's Motion on October 13, 2021.  ECF No. 24.  However, his arguments concern a shoulder injury rather than the claims in the instant Complaint regarding his COVID-19 diagnosis.  *See id.*  On October 29, 2021, Defendants filed a reply indicating that Burkins' response is instead a response related to another of Burkins' cases pending in this District, Civil Action No. SAG-21-244.  ECF No. 27.  It appears Burkins mistakenly filed his response in the incorrect case.  Defendants have attached the correct response that Burkins submitted in Civil Action No. SAG-21-244, which, in light of Burkins' self-represented status, the Court will consider as Burkins' opposition to Defendants' Motion.  *See* ECF No. 27-1.

I.   BACKGROUND

a. Plaintiff's allegations

Burkins asserts that on December 5, 2020, while incarcerated at Jessup Correction Institution ("JCI") he spoke to Nurse Nwabuwa in the medical department to tell her that he believed he had contracted the COVID-19 virus. ECF No. 1 at 2; ECF No. 27-1 at 2. Burkins states he was instructed to submit a sick call. *Id.* Burkins did so and asserts that on December 7, 2020, he told RN Nwabuwa that he believed he had symptoms of COVID-19. *Id.* at 5. Nwabuwa allegedly told Burkins he had the flu and gave him Robitussin pills, but refused to test him for COVID-19. *Id.* Burkins had another sick call on December 15, 2020, at which he repeated his concern that he had COVID-19 to Nwabuwa. *Id.* Burkins states that he was tested for COVID-19 only after he demanded Nwabuwa do so. *Id.* Burkins received positive COVID-19 test results on December 20, 2020. *Id.* He was quarantined for the following five days. *Id.* He asserts he was exposed because the institution had not complied with safety standards and contends that he should have been removed from general population on December 5, 2020. *Id.*; ECF No. 27 at 2.

b. Defendants' Response

Corizon Health Inc. is the contracted medical provider for the Department of Public Safety and Correctional Services ("DPSCS"). They employ Dr. Temesgen, a physician who serves as the Regional Medical Director for the Jessup Region, and Nurse Nwabuwa, a registered nurse, working at JCI. ECF No. 18-2 at 2.

Temesgen and Nwabuwa both attest that neither was working at JCI on December 5, 2020. Temesgen Decl., ECF No. 18-4 at ¶ 5; Nwabuwa Decl., ECF No. 18-6 at ¶ 5. Nwabuwa does not recall having a conversation with Burkins outside the context of a sick call on any date about COVID-19 symptoms. ECF No. 18-6 at ¶ 6.

On December 9, 2020, Burkins submitted a sick call request complaining of chest congestion. Medical Records, ECF No. 18-5 at 70. Nwabuwa saw Burkins that afternoon regarding his complaints of a cough and chest congestion. *Id.* at 5. Nwabuwa noted that Burkins' temperature was within normal limits, his breathing was unlabored, he denied having chills, nausea, vomiting, or shortness of breath. *Id.*; ECF No. 18-6 at ¶ 7. Nwabuwa advised Burkins to return if his symptoms persisted. ECF No. 18-5 at 5. Nwabuwa attests Burkins "did not have many symptoms associated with COVID-19" and his vitals were normal. ECF No. 18-6 at ¶ 7.

On December 10, 2020, Burkins was seen by RN Nathalie Bih for a dietary physical. ECF No. 18-5 at 6. He did not report a headache, chills, cough, body aches or loss of taste at that time. *Id.*

On December 12, 2020, Burkins was seen by RN Mercy Addai, after being found on the floor unresponsive and transported to the medical department via wheelchair. *Id.* at 7. He stated that he was drunk from alcohol he made from fruits. *Id.* at 7-9. Burkins was held for medical observation and administered IV fluids. *Id.* No respiratory distress was noted. *Id.* at 9.

On December 14, 2020, Burkins submitted a sick call complaining of pain and bruising on his right shoulder and pain in his right hip. ECF 18-5 at 72. Nwabuwa saw Burkins that afternoon at which time he was referred to a provider for an x-ray. *Id.* at 13-15. Burkins filed another sick call that same day because he was sick and wanted to be tested for COVID-19. *Id.* at 74. He reported symptoms of fatigue, a congested nose, and shortness of breath. *Id.*

On December 15, 2020, Burkins was seen by Nwabuwa in response to his request, at which time he told Nwabuwa that his symptoms of coughing, nausea, inability to taste or smell, lightheadedness, dizziness, and fatigue had been ongoing for seven days. *Id.* at 18. Nwabuwa

notified NP Clarice Aryiku, who ordered a COVID-19 test for Burkins. *Id.* at 19; ECF No. 18-6 at ¶ 13. Nwabuwa did not see Burkins after December 15, 2020. ECF No. 18-6 at ¶ 14.

On December 18, 2020, Burkins was seen by NP Electa Awanga to review his x-ray results, which were unremarkable. ECF No. 18-5 at 22. He denied any symptoms of fever, fatigue, headaches, or cough. *Id.*

Burkins returned to the medical department on December 21, 2020, at which time Dr. Vipul Kella informed Burkins he had tested positive for COVID-19 and prescribed Lovenox. *Id.* at 24-26. At that time, Burkins denied any symptoms of fever, chill, cough, or shortness of breath. *Id.* at 26. Burkins was sent to "the Annex" for evaluation and isolation; he denied having any upper respiratory symptoms. *Id.* at 27.

The following day, Burkins was seen by Dr. Adirenne Yip who noted that Burkins did not have any acute overnight events and did not have any complaints of cough or shortness of breath. *Id.* at 32. She assessed that Burkins had an asymptomatic COVID-19 infection. *Id.* On December 23, 2020, Dr. Amit Kalaria similarly noted that Burkins did not have any respiratory complaints and denied any shortness of breath, fever, or cough. *Id.* at 34. Burkins was also asymptomatic on December 24, 2020. *Id.* at 36. Burkins was discharged from the Annex and returned to JCI general population on December 25, 2020. *Id.* at 38. The record does not show Burkins made any further complaints related to COVID-19 symptoms between his discharge and his release from JCI on March 5, 2021. *See id.* at 40-50, 60.

**II.      Standard of Review**

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF No. 18. Motions styled in this manner implicate the Court's discretion under Fed. R. Civ. P. Rule 12(d). *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp.2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants' Motion is titled as a motion to dismiss or, in the alternative, for summary judgment, Burkins was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. Thus, the Court will review Burkins' claims under the Rule 56(a) standard and will consider the exhibits and declaration filed in support of the dispositive motion.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a

verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007). *See also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). The Court is mindful that Burkins is a self-represented litigant. A federal court must liberally construe pleadings filed by *pro se* litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### III. Discussion

#### a. Respondeat Superior Liability

Corizon Health Inc. ("Corizon") contends that it is entitled to summary judgment, as Burkins does not state any specific allegations against Corizon, and to the extent he seeks to hold Corizon responsible as the employer of Defendants Temesgen and Nwabuwa, there is no

respondeat superior liability, as it is well established that the doctrine does not apply to claims asserting constitutional deprivations brought pursuant to 42 U.S.C. § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). In this respect, a private corporation that steps into the shoes of a state actor cannot be held liable for a § 1983 claim solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Pub. Safety and Corr. Servs.,* 316 F. App'x. 279, 282 (4th Cir. 2009). Rather, liability to the entity itself attaches only when the constitutional deprivation resulted from the entity having implemented an unconstitutional policy, custom, or practice. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). Accordingly, to survive challenge, Burkins must point to some evidence that he was denied treatment for COVID-19 pursuant to a policy, custom, or practice and that denial proximately caused the alleged constitutional violation. *Monell*, 436 U.S. at 690; *see also Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

No evidence exists to support such a claim. Burkins does not pursue this liability at all. As such, summary judgment is granted in Corizon's favor on this basis alone.

  b. Deliberate Indifference

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, Burkins must demonstrate that Defendants Temesgen and Nwabuwa's acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff

7

were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 842. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference."). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695-96; *see also Jackson*, 775 F.3d at 178 (describing the applicable standard as "exacting"). A mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto*, 841 F.3d at 225. Further, the inmate's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)).

Defendants argue Dr. Temesgen and Nurse Nwabuwa are entitled to summary judgment, because the undisputed facts demonstrate that neither were deliberately indifferent to Burkins' medical needs. ECF No. 18-2 at 15-17. Viewing the evidence in the light most favorable to Burkins, the Court cannot find that either Dr. Temesgen or Nurse Nwabuwa were deliberately indifferent to Burkins' medical needs.

At best, Burkins' only claim as to Dr. Temesgen is that on December 5, 2020, Dr. Temesgen refused Burkins' a COVID-19 test after Burkins asserted he had a COVID-19 infection. *See* ECF No. 1 at 5. However, neither Dr. Temesgen nor Nurse Nwabuwa was present at JCI on December 5, 2020, and nothing in the record indicates Burkins was seen by Dr. Temesgen on that date. Therefore, as Temesgen did not have any subjective awareness of Burkins' medical needs,

9

he could not have been deliberately indifferent to those needs. As such, Dr. Temesgen is entitled to summary judgment in his favor.

Nurse Nwabuwa did not see Burkins until December 9, 2020, in response to his sick call request complaining of chest congestion. Nwabuwa assessed Burkins and "did not believe he had a COVID-19 infection" because he did not have many symptoms associated with COVID-19. ECF No. 18-6 at ¶ 7. Burkins returned to see Nurse Nwabuwa on December 15, 2020, at which time Nurse Nwabuwa notified NP Aryiku to test Burkins for COVID-19 after he reported additional symptoms of nausea, inability to taste or smell, lightheadedness, dizziness, and fatigue which he stated had lasted for seven days. *Id.* at ¶ 13; ECF No. 18-5 at 18-19. Thereafter, Nurse Nwabuwa did not see Burkins. ECF No. 18-6 at ¶ 14.

Defendants do not contest that COVID-19 is an objectively serious medical need. However, nothing in the record shows that Nurse Nwabuwa's decisions amount to an act or omission "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. While Burkins contends that Nurse Nwabuwa failed to test him for a COVID-19 infection earlier, an Eighth Amendment claim is not presented where, as here, a plaintiff's claim relies on the assertion that they were not provided the exact medical treatment they desired. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir.1970)). Burkins' desire to have been tested earlier does not demonstrate that Nwabuwa was deliberately indifferent. Importantly, Burkins first notified Nwabuwa of his concern on December 9, 2020, and six days later when he presented with further symptoms of COVID-19, Nwabuwa referred Burkins to be tested. Instead of indifference, the record indicates Nwabuwa assessed Burkins' symptoms and

10

referred him for a COVID-19 test as soon as Nwabuwa believed Burkins had symptoms indicating that he may have a COVID-19 infection.  *See Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent").  Therefore, while COVID-19 presents a serious medical need, Nwabuwa did not act with deliberate indifference and is entitled to summary judgment in her favor.

### IV.    Conclusion

For the foregoing reasons, the Court:

1. **DIRECTS** the Clerk to **AMEND** the docket to reflect Defendant Corizon Resident Agent's name as "Corizon Health Inc.";

2. **GRANTS** Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, which the Court construes as a motion for summary judgment (ECF No. 18);

3. **ENTERS** judgment in favor of Defendants;

4. **DIRECTS** the Clerk to **PROVIDE** a copy of this Memorandum Opinion and Order to Burkins and to counsel; and

5. **DIRECTS** the Clerk to **CLOSE** this case.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby  
LYDIA KAY GRIGGSBY  
United States District Judge